An administratrix permitted the saloon of her intestate to pass into the control of her husband. Before the settlement of the estate she died. *Held*, her estate was chargeable with the value and interest of the saloon, and with its profits, if it was conducted in her interest.

2. SAME—CONTINUING BUSINESS OF INTESTATE.

Where an administratrix allowed the saloon of her intestate to pass into the control of her husband, she cannot be chargeable with the gross receipts, as she must be allowed the expense of conducting it.

3. SAME—OBJECTIONS TO ACCOUNT.

In charging an administratrix with the profits of a saloon of her intestate conducted by the husband of the administratrix, the persons objecting must show what the profits were.

4. SAME—EVIDENCE—DECLARATIONS.

Declarations of an administratrix that she had sold the saloon of her decedent to her husband are admissible after her death as res gestæ characterizing the possession of her husband, in so far as they are against her interest.

In the matter of the judicial settlement of the account of Carlotta Suess, administratrix of Carl Suess. Decree rendered.

Rose & Putzel, for accountant.

O. B. Thomas, for contestants.

THOMAS, S. A careful examination of the record satisfies me that Carlotta Suess, as administratrix, surrendered and delivered the saloon, with its good will and fixtures, to Jacob Suess, at or before the time of her marriage to him, and that thereafter he was permitted by her to treat it as his own. She either sold the property to him for a consideration, or she gave it to him, and whether she did the one or the other her liability is the same. In order that she should be chargeable with the proceeds of the business it must appear that those proceeds were received by her, or were under her control, and the evidence does not justify a finding that this was the case. On the contrary, the evidence relied on by the objectants as to the amounts of the receipts is mainly, if not exclusively, the rec-

ord of deposits by Jacob Suess in a bank to his own credit and subject to his own checks. This proceeding is not against Jacob Suess or his legal representatives, as such; and even if the property was acquired by him from the administratrix with notice of the trust, without consideration, or for a consideration moving personally to the administratrix, a decree cannot on that ground be rendered against the administratrix or her executors for moneys received by him which never reached her hands; and even if an accounting could properly be required of the administratrix as to the profits of the business, on proof, now unsupplied, that Jacob Suess acted as her agent with respect to its management, the measure of the recovery must be limited to profits, and on no just theory could she be denied all allowance for necessary expenses. On the report as made no deduction is made for rent, or for cost of supplies, or for services of Jacob Suess or of his employés, or for the many other charges which must have been incurred to have secured so substantial a result in receipts. The theory that all receipts constituted assets, and that the administratrix can only be discharged as to any of them by the production of vouchers, is untenable. The proceeds of beer purchased on the credit of Jacob Suess, or of Mrs. Suess, after the death of the decedent, were not assets of his estate, and were not constituted such assets by the fact that the saloon where the sales were made, with its fixtures and good will, were assets. For the value of such saloon, fixtures, and good will, the administratrix was clearly chargeable. She was also chargeable with interest on that value. If she used it in carrying on a trade for her own benefit, and realized profits, the parties in interest could demand such profits in lieu of interest. This is the attitude of the objectants in this proceeding. But they cannot recover the whole gross returns of the business. They are confined to profits, and the burden of proof rests upon them to establish that profits were obtained over and above all of the expenses of the business. If such expenses are to be proved by vouchers, or not at all, then the failure to produce such vouchers must result in the loss of the objectants, since the actual or probable expense of carrying on the business is a part of their affirmative case. The rule requiring vouchers in an accounting by an administrator has no application to such an issue. In re Munzor's Estate, 4 Misc. Rep. 374, 25 N. Y. Supp. 818; Kenyon v. Olney (Sup.) 15 N. Y. Supp. 416. Unfavorable inferences might be drawn from the conduct of the accountants in resisting proof of expenses, but they could not be punished for this to the extent of charging them with the gross proceeds of all sales. The transfer of the saloon was made about May, 1878. The parties to it are dead. The declarations alleged to have been made by the deceased administratrix to the witnesses Snyder and Rose, as to the fact that a sale had been made, were parts of the res gestæ, since they served to characterize the possession of Jacob Suess as being that of an owner, and not an agent. In so far as they were against the interests of Mrs. Suess, they may also stand, since they concerned her own act in making a sale, and did not refer to any act of the decedent, and she is dead. Livingston v. Arnoux, 56 N. Y. 507. Independent of those declarations we may safely assume that the payments shown to have been

made by Jacob Suess for beer furnished to the saloon, and for other debts, were part of the consideration for the transfer to him, but the declarations are of doubtful value as fixing the amount of the debts of the decedent as the full measure of the consideration, and they do not purport to exclude all benefits received by Mrs. Suess personally. One item of payment was $639.75 for beer furnished to the administratrix during the short time that she carried on the business after the death of the decedent. This was, presumably, the wholesale price of the beer sold by her at retail, and we can assume that the business was sufficiently profitable to cover its cost. She will, therefore, be charged with this sum, together with $14.50, shown to have been on deposit to the credit of the decedent, making $654.25. In view of the simplicity of the saloon and its fixtures, and in the light of all of the testimony as to its value, I am of opinion, and will find as a fact, that it was reasonably worth at that time no more than was paid by Jacob Suess, including the sum paid on the debt incurred by the administratrix, already alluded to. In view of the great lapse of time and of the neglect of the parties to assert their claims more promptly, only simple interest on this amount from May 11, 1878, at 6 per centum per annum, will be charged. The deceased administratrix will be allowed commissions. Costs of both parties will be paid out of the estate. Submit a decree in accordance with this memorandum, and settle the same on notice.

Decreed accordingly.