104 So.2d 756

Frances J. CATES, as Guardian,

v.

John Lewis CATES, as Administrator.

7 Div. 363.

Supreme Court of Alabama.

July 24, 1958.

W. H. Collier, Jr., Birmingham, for appellant.

Handy Ellis, Columbiana, and Earl Mc‹ Bee, Birmingham, for appellee.

**8**

SIMPSON, Justice.

This appeal is by Frances Cates, as guardian of the estate of Cande Cates, a minor, from a decree on final settlement in the Circuit Court in Equity of the estate of Cecil W. Cates, deceased. The only persons interested are the administrator, John Lewis Cates, and the minor Cande Cates, brother and sister.

It appears from the evidence that Cecil Cates, the intestate and father of the parties, had been engaged in the milk hauling business at least twenty years. In this business the intestate owned (with certain minor incumbrances) the milk hauling equipment, e. g. three truck trailers and two milk tank trailers. At the time of his death on January 5, 1955, he had two contracts for the hauling of milk with Foremost Dairies, Inc., hereinafter called Foremost. One of such contracts was in writing and called for the hauling of milk from Burkeville, Alabama, to Birmingham, which contract was to expire January 1, 1957. The second contract, covering the hauling of milk from Houston, Mississippi, to Birmingham, was oral. In 1954 the gross income of the intestate's milk hauling business was approximately $50,000.

John Lewis Cates was appointed administrator of the estate of Cecil W. Cates and operated the milk hauling business for the benefit of the estate from the date of the intestate's death until July 21, 1955; the net profits of such operation were $7,359.18.

On June 24, 1955, John Lewis Cates was advised by Foremost that it was Foremost's desire to place the "temporary milk hauling arrangement * * * on a permanent basis", with contracts covering both the Alabama and Mississippi routes. Foremost also stated that if a "corporate set-up is desired, it should contain a stipulation that you (John Lewis Cates) must be principal stockholder and manager and should provide for cancellation should you cease active personal management or lose corporate control * * *". Appellant interposed a specific but inappropriate objection to such evidence. Sec. 372(1), Tit. 7, Ala. Code 1940 as amended, does not therefore apply. Rudicell v. Rudicell, 262 Ala. 41, 77 So.2d 339; see also Holt Lumber Co. v. Givens, 196 Ala. 640, 72 So. 257.

Thereafter on July 21, 1955, John Lewis Cates organized a corporation, the name of

which was Cates Milk Hauling, Inc., and the stockholders were John Lewis Cates, Jacquelyn H. Cates, his wife, and Beacon Howell, Sr., his father-in-law. Cates Milk Hauling, Inc., assumed the operation of the milk hauling business on August 1, 1955, although written contracts between the corporation and Foremost covering such operations were not signed until September 3, 1955.

On March 17, 1955, at a time when the administrator was operating the business for the benefit of the estate, and while the estate was still pending in the Probate Court, the administrator filed a petition to sell the aforementioned milk hauling equipment in the Probate Court. Upon removal to the Circuit Court in Equity, the administrator again on May 4, 1955, filed a petition for said purpose to which a demurrer and plea was filed by the appellant herein. After adverse ruling thereon, the appellant herein appealed to this Court and on July 26, 1956, this Court affirmed the lower Court's ruling.[1]

It further appears that on July 22, 1955, John Lewis Cates, individually and as administrator, leased the aforementioned milk hauling equipment to Cates Milk Hauling, Inc., for the sum of $400 a month which sum was paid over to the estate for four months. Thereafter John Lewis Cates as administrator purported to distribute said equipment to himself and Cande Cates as heirs of the intestate. A report of such distribution was filed on November 23, 1955, in the lower court. John Lewis Cates thereupon sold his one-half interest in the equipment to Cates Milk Hauling, Inc., and a bill to sell the same for division among joint owners was filed by it in Circuit Court of Jefferson County. It does not appear from the record what action was taken thereon; suffice it to say the corporation has continued to use the equipment in the milk hauling operation and has realized profit therefrom.

From the final decree on petition for final settlement and contest thereof, the guardian of the minor has appealed assigning in part as error the failure of the trial court to charge the administrator with the profits realized by Cates Milk Hauling, Inc., and the failure of the trial court to charge the administrator with the good will of the intestate's milk hauling business.

■■■ An administrator has no power generally to continue the business in which the decedent was engaged. Griffin v. Bland, 43 Ala. 542; Pearce v. Pearce, 199 Ala. 491, 74 So. 952; Bogert, "Trusts and Trustees", § 471; 11 R.C.L., Exec. & Adm., § 142.

The personal representative may, however, continue the business of the decedent so far as is necessary to carry out the executory non-personal contracts of the decedent. Brown v. Oldham, 263 Ala. 76, 81 So.2d 331; Allen v. Stradford, 201 Ala. 559, 78 So. 955; Pearce v. Pearce, supra; Shea v. Graves, 142 Or. 503, 19 P.2d 406, 410; Burch v. J. D. Bush & Co., 181 N.C. 125, 106 S.E. 489; 33 C.J.S. Executors and Administrators § 194. And where a personal representative does in fact perform the contract of the decedent, the estate will be entitled to any profit realized in consequence. 33 C.J.S. Executors and Administrators § 189.

■■■ It is also well settled that when a personal representative carries on the trade or business of the decedent, he is chargeable with the use of the property and capital with interest or the profits made in carrying on the business. Steele v. Knox, 10 Ala. 608; In re Suess, 37 Misc. 459, 75 N.Y.S. 938; 3 Bogert, "Trusts and Trustees", § 577; 4 Schouler, "Wills, Executors & Administrators", p. 2497; Restatement of the Law of Trusts, § 230(m); 33 C.J.S. Executors and Administrators § 193; Sevaine v. Hemphill, 165 Mich. 561, 131 N.W. 68, 40 L.R.A.,N.S., 201.

■■■ Where the personal representative converts the business of the decedent, he

1.  264 Ala. 628, 89 So.2d 69.

is chargeable with the value of the business and the profits made during the period of conversion. 33 C.J.S. Executors and Administrators § 242; see also Amos v. Toolen, 232 Ala. 587, 168 So. 687; In re Mueller's Estate, 190 Pa. 601, 42 A. 1021; In re Moore, 69 Misc. 535, 127 N.Y.S. 884; 21 Am.Jur., Exec. & Adm. § 310.

■■ The business of Cecil Cates, the intestate, was confined to two contracts with Foremost. Each of these contracts called for the mere hauling of milk from one point to another; two employees theretofore, engaged by the decedent, in fact drove the trucks. The trial court held that the written contract was personal in nature and terminated upon the death of the intestate. We think this was an erroneous interpretation of the contracts and that they still had value after the death of the decedent.

Contracts resting on the skill, taste, or science of a party, i. e., those contracts wherein personal performance by the promisor is of the essence and the duty imposed can not be done as well by others as by the promisor himself, are personal and do not survive his death. 17 C.J.S. Contracts § 465; 21 Am.Jur., Exec. & Adm., § 337; 11 R.C.L., Exec. & Adm., § 174; see also Jones v. Anderson, 82 Ala. 302, 2 So. 911; Gilbert v. Wilson, 237 Ala. 645, 188 So. 260.

We conclude that the contracts herein are not personal in nature and were not terminated by the death of Cecil Cates. Brown v. Oldham, supra; Burch v. J. D. Bush & Co., supra; 6 Corbin, "Contracts", § 1334; Williston, "Contracts", §§ 411, 412, 1940. See also Allen v. Stradford, supra. The administrator had the right, therefore, to carry out and enforce the written contract of the decedent (33 C.J.S. Executors and Administrators §§ 189, 194; Schouler, "Wills, Executors & Administrators", § 2451; 11 R.C.L., Exec. & Adm., § 174; 21 Am.Jur., Exec. & Adm., § 337; see also Shea v. Graves, supra), or to sell it as an asset of the business.

No legal evidence was presented as to the duration of the oral agreement between the intestate and Foremost. 9 Ala.Digest, Evidence, ☜317, etc. Until such time as the contract did in fact terminate, the administrator had the same power with respect to it. Authorities, supra.

■ But, the administrator, on advice of counsel and the urgence of Foremost, chose not to carry out the decedent's contract with Foremost, and proceeded to organize a corporation with himself as main stockholder, to operate the milk hauling business. This was in effect the taking over by the corporation and by the appellee, its alter ego, of the milk hauling business of the decedent. From this appropriation by the appellee of the milk hauling business, we think it results that the administrator on his final settlement should be charged with the value of such business at the time of appropriation, including the good will and the hauling contracts, as well as the value of the intestate's equipment used in connection therewith. See 14 Am. & Eng. Cyc. of Law, 2d Ed., p. 1086; 33 C.J.S. Executors and Administrators § 97; also Yost v. Patrick, 245 Ala. 275, 17 So.2d 240; Collas v. Brown, 211 Ala. 443, 100 So. 769; and other authorities, supra.

The trial court seems not to have treated the milk hauling of the intestate as a business, and ignored the contracts and good will by merely determining the value of the estate to be the trucks, equipment, and personal property alone. In this we think the learned court erred. The cause should, therefore, be reversed and remanded so that the value of the business at the time of its appropriation by the administrator for the benefit of his corporation might be appraised, and the appellant be paid her share. This will include the value of the good will and the contracts which intestate had with Foremost.

■ Appellant also argues that since the administrator appropriated the business of the deceased, he should not be allowed the attorney's fees and special services award-

ed him by the trial court. In this we cannot agree. There was no fraud, negligence, or bad faith on the part of the administrator in the method by which he handled the estate and by reason of the peculiar circumstances of the business, he was advised by his attorneys to do as he did do, and his actions in this regard are not shown to have been in bad faith. Of consequence we affirm the holding of the trial court with respect to these special charges. Wilkerson v. Wilkerson, 257 Ala. 633, 60 So.2d 343; Webb v. Webb, 250 Ala. 194, 33 So.2d 909; Stumpf v. Wiles, 235 Ala. 317, 179 So. 201; King v. Keith, 257 Ala. 463, 60 So.2d 47.

Affirmed in part, and in part reversed and remanded.

LIVINGSTON, C. J., and GOODWYN, MERRILL and COLEMAN, JJ., concur.

LAWSON, J., concurs in the result.

